E-FILED
Thursday, 25 June, 2009  01:39:14 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| VILLAGE OF DEPUE, ILLINOIS, | ) | |
| *a Municipal Corporation*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Nos. 08-cv-1272, 08-cv-1273 |
| v. | ) | |
| | ) | |
| VIACOM INTERNATIONAL, INC. | ) | |
| n/k/a CBS OPERATIONS, INC. and | ) | |
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N  &  O R D E R

This consolidated civil action, initiated by the Village of DePue ("Village"), is

the Village's second recent suit against Viacom International, Inc./CBS Operations,

Inc. and Exxon Mobil Corporation regarding environmental contamination at the

DePue/New Jersey Zinc/Mobil Chemical Corp. Superfund Site ("Site").  The

expansive 1500-acre Site is located within the Village in Bureau County, Illinois.

The Site's environmental problems and the Village's earlier suit are discussed

below.

In the present action, the Village alleges that Exxon and CBS Operations

(collectively, "Defendants"), as respective owner and lessee of the Site, are in

violation of a recently-enacted hazardous substances ordinance.  In addition, the

Village seeks to advance claims of common law nuisance and trespass.  Defendants

have jointly filed a motion to dismiss all of the Village's claims (Doc. 20).  For the

reasons stated below, the motion is GRANTED.

**BACKGROUND**

To put this lawsuit in proper context, it is necessary to briefly outline a few

points: (1) the Site's environmental history; (2) the Village's earlier suit against

Defendants in this Court; and (3) subsequent actions taken by the Village.  The

background information provided below is taken from the following sources: this

Court's opinion in <u>Village of DePue v. Exxon Mobil Corp.</u>, 2007 WL 1438581 (C.D.

Ill. May 15, 2007); the decision of the Seventh Circuit Court of Appeals in <u>Village of

DePue v. Exxon Mobil Corp.</u>, 537 F.3d 775 (7th Cir. 2008); and the Environmental

Protection Agency's ("EPA") National Priorities List ("NPL") Fact Sheet for the

DePue Site, http://www.epa.gov/region5/superfund/npl/illinois/ILD062340641.htm

(updated April 28, 2009) ("4/28/2009 NPL Fact Sheet").[1]

**1.    The Site, State Involvement, and the Ongoing Cleanup**

Defendants' corporate predecessors operated a zinc smelting facility and a

diammonium phosphate fertilizer plant on the Site from 1903 until the late 1980s.[2]

---

[1] Federal courts may take judicial notice of previous judicial decisions.
<u>Consolidation Coal Co. v. United Mine Workers of Am., Dist. 12, Local Union 1545</u>,
213 F.3d 404, 407 (7th Cir. 2000); <u>Opoka v. I.N.S.</u>, 94 F.3d 392, 394-95 (7th Cir.
1996); <u>see</u> <u>Limestone Dev. Corp. v. Village of Lemont</u>, 473 F. Supp.2d 858, 868 (N.D.
Ill. 2007).  Courts may also judicially notice the reports of administrative bodies and
documents contained in the public record.  <u>Menominee Indian Tribe of Wis. v.
Thompson</u>, 161 F.3d 449, 456 (7th Cir. 1998).

[2] Smelting operations began at the Site in 1903 and phosphate fertilizer production
began there around 1967. (4/28/2009 NPL Fact Sheet -- Site Description).  According
to the Village's Amended Complaint, manufacturing activity at the Site ceased in
1987, and the Site has been "abandoned" since that time.  (Am. Compl. ¶¶ 5, 9).

The manufacturing operations at these facilities generated waste material that contaminated the Site.  As a result, the Site and some surrounding areas presently contain elevated levels of cadmium, lead, and other metals.  (4/28/2009 NPL Fact Sheet -- Threats and Contamination).  According to EPA assessments, the increased concentrations of metals in the area pose no short-term threats to nearby populations; however, the EPA has expressed general concern about potential long-term adverse health effects resulting from elevated amounts of cadmium.  See Village of DePue, 2007 WL 1438581, at *1 (citing an earlier -- but unchanged in relevant part -- version of the NPL Fact Sheet).

After taking note of the Site in 1980, the EPA conducted preliminary environmental assessments in following years pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq.  In 1992, the Illinois Environmental Protection Agency ("IEPA") also began to investigate the Site pursuant to its authority under Illinois law.  Village of DePue, 2007 WL 1438581, at *2.  As a result of the EPA's and IEPA's investigations and assessments, the EPA added the Site to the National Priorities List in 1999.  This addition confirmed the Site's status as one of the most contaminated spots in the United States.

In 1995, prior to the Site's official placement on the NPL, the Illinois Attorney General filed suit in Illinois circuit court (at the IEPA's request) against Defendants' corporate predecessors pursuant to the Illinois Environmental

Protection Act ("the Illinois Act"), 415 Ill. Comp. Stat. 5/22.2 & 42(d), (e).[3]  As a

result of the Attorney General's suit, Defendants entered into an interim consent

order ("Consent Order") with the People of the State of Illinois.  The Seventh Circuit

Court of Appeals has described Defendants' responsibilities under the Consent

Order as follows:

> Under this Consent Order, [Defendants] must perform a phased
> investigation of the site and implement certain interim remedies.
> [They] also must propose final remedies to the State of Illinois before
> completing final remedial action for the site.  The Consent Order
> requires [Defendants] to perform . . . investigations and remedial
> actions in compliance with both the ICP (Illinois Hazardous
> Substances Pollution Contingency Plan) and the NCP (National Oil
> and Hazardous Substances Pollution Contingency Plan).  The State of
> Illinois, in consultation with the EPA, has sole discretion to decide if
> the final remedies proposed by [Defendants] are appropriate.  The
> activities completed under the Consent Order are subject to approval
> by the State of Illinois.

Village of DePue, 537 F.3d 775, 780 (7th Cir. 2008) (citations and quotation omitted)

(explanatory parentheticals for ICP and NCP added).[4]

Currently, Defendants are in the process of conducting remedial

investigations and feasibility studies at the Site, i.e. gathering data about the

nature and extent of the contamination and evaluating possible cleanup options.

(Am. Compl. ¶ 17; 4/28/2009 NPL Fact Sheet -- Cleanup Progress).  As part of this

phase of the cleanup, Defendants are collecting information about possible risks to

human health.  See Village of DePue, 537 F.3d at 780.  The Consent Order

---

[3] Going forward, for purposes of convenience, the Court will refer to Defendants and
their corporate predecessors interchangeably unless a distinction is otherwise
noted.

[4] In this cited opinion, the Seventh Circuit Court of Appeals described, in greater
detail, the relationships between CERCLA, NCP, ICP and the Illinois Act.

expressly requires this type of health-related investigation.  (Ex. B to Mot. to Dismiss, Consent Order ¶ III(B)(2)(b)).[5]

While, overall, Defendants are at the investigatory stage of the cleanup process, they have already implemented certain limited environmental remedies at the Site, including a dust control program and a water treatment system to treat surface water discharging into Lake DePue. (4/28/2009 NPL Fact Sheet -- Cleanup Progress).  After Defendants complete their remedial investigations, they will conduct design studies and, then, begin permanent remediation at the Site.  See Village of DePue, 537 F.3d at 780-81.  Defendants have spent over $30 million in connection with Site cleanup, id. at 780, and it is undisputed that Defendants are fulfilling their responsibilities under the Consent Order.

2.      The Village's Prior Action against Exxon and CBS Operations

Dissatisfied with Defendants' rate of progress in cleaning up the Site, the Village decided to take matters into its own hands in August 2006.  Pursuant to a local nuisance ordinance (Section 7-5-3 of the DePue Village Code), the Village posted "Notice[s] to Abate Nuisance" at the Site.  These notices directed Defendants to perform an immediate cleanup of the Site, under penalty of $750 for each day the Site remained a nuisance.[6]  In October 2006, the Village brought suit against

---

[5] Judicial notice of the Consent Order is appropriate here, as its terms are not subject to reasonable dispute.  See GE Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081-82 (7th Cir. 1997) (collecting cases).

[6] Without providing a factual basis, the Notices to Abate indicated that the Village Board had declared the Site to be a public nuisance.  The notices ordered immediate removal of "the materials" and cleaning of "all contaminates," but these terms were left undefined.

Defendants in Illinois circuit court, alleging violations of the nuisance ordinance. Village of DePue, 2007 WL 1438581, at *3.  The Village sought the following relief: a declaratory judgment that Defendants were in violation of the ordinance; fines of $750 for each day Defendants were in violation; and an injunction requiring Defendants to immediately complete a total cleanup of the Site.  Id.

Defendants removed the suit to federal court based on diversity jurisdiction and filed a motion to dismiss.  This Court granted the motion to dismiss, holding the Village's claims to be preempted by federal and state law.  Village of DePue, 2007 WL 1438581, at *12.  The Village appealed, and the Seventh Circuit Court of Appeals affirmed this Court's dismissal based on state law preemption.  Village of DePue, 537 F.3d at 789 (hereinafter "DePue I").  The Court of Appeals began its consideration of the state law preemption issue in DePue I by stressing the Village's status as a non-home-rule municipality with limited powers under the Illinois Constitution.  537 F.3d at 787-88.  Specifically, the court noted the Village's lack of authority to enforce any ordinance conflicting with the spirit and purpose of a state statute.  Id. at 787.  The Court of Appeals went on to hold that the Village's use of its nuisance ordinance to force Defendants to perform an immediate cleanup of the Site undoubtedly conflicted with the spirit and purpose of the Illinois Environmental Protection Act.  The court recognized, "because environmental damage does not respect political boundaries, it is necessary to establish a unified state-wide program for environmental protection . . . environmental problems are closely interrelated and must be dealt with as a unified whole in order to safeguard

the environment." <u>Id.</u> at 788 (quoting the Illinois Act, 415 Ill. Comp. Stat. 5/2(a)(ii),

(iii)).  Applying the preemption standard for non-home-rule municipalities in

Illinois, the Court of Appeals concluded as follows:

> The Village's application of its nuisance ordinance seeks to address, in a heavy-handed manner, a difficult environmental problem that certainly is not only of local concern.  If the Village were permitted to apply its nuisance ordinance to force [Defendants] to complete <u>immediately</u> the cleanup of the site, on penalty of $750 per day for noncompliance, then it could prevent compliance with the measured cleanup process adopted by Illinois through the Consent Order under the authority of Illinois law.  Such a result would frustrate the purpose of the Illinois Act.
>
>    . . . .
>
> The Illinois legislature enacted the Illinois Act in order to safeguard the environment and to restore contaminated areas through a phased and carefully considered process.  Ignoring this process by conducting and concluding a cleanup to the satisfaction of the Village is not a plan in service to the goals of the Illinois Act.  The Village's application of its nuisance ordinance in this case is overreaching because it attempts to regulate an environmental hazard that is not local in nature and that already is subject to a cleanup under the authorization and direction of the state.  Accordingly, we hold that the Village's claims are preempted by the Illinois Act.

<u>Id.</u> at 788-89 (citations omitted) (emphasis in original).

### 3.   Post <u>DePue I</u>

Despite its loss in <u>DePue I</u>, the Village has initiated this second lawsuit,

against the same defendants, based on the effects of pollution at the Site.  There are

some key differences this time around, however.  First, the Village is now a home-

rule unit of local government.  According to the Amended Complaint, on November

4, 2008, Village of DePue voters passed a referendum to adopt home-rule status

under the Illinois Constitution.  (Am. Compl. ¶ 6).  As a home-rule municipality, the Village now has greater autonomy in governing its local affairs.

The second difference is that the Village is suing under a new ordinance.  On September 8, 2008 (after the Seventh Circuit issued its decision in DePue I) the Village enacted a new "Hazardous Waste and Hazardous Substances" ordinance pursuant to authorization under a public health provision within the Illinois Municipal Code.[7]  (Ex. 2 to Am. Compl., Ordinance No. 08-9, adding DePue Village Code 7-6).  On November 10, 2008, after becoming a home-rule municipality, the Village amended the ordinance to reflect municipal home-rule status.  The amended ordinance prohibits any person, entity, or corporation from owning, controlling, or possessing "real property by lease, trust or deed which contains hazardous wastes or hazardous substances."  (Ex. 6 to Am. Compl., Ordinance No. 08-12, amending DePue Village Code 7-6 & 7-7, at 7-7-5).  The terms "hazardous waste" and "hazardous substances" are defined by cross-references to parallel provisions of the Illinois Act.  In addition, the ordinance gives Village authorities the discretion to determine what is hazardous to public health and safety.  (DePue Village Code 7-7-1 & 7-7-2).

The original version of the hazardous substances ordinance, enacted on September 8, 2008, provided for a fine of up to $750 per day of violation.  The November 10, 2008 amendment increased that penalty significantly to a one-time

_____

[7] The authorization provision reads, in part, as follows: "The corporate authorities of each municipality may do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of diseases . . . ."  65 Ill. Comp. Stat. 5/11-20-5.

fine of up to $50,000 and a recurring daily fine of up to $10,000.  (DePue Village Code 7-7-6).

It seems apparent that the Village designed the November 10, 2008 amendment to target Defendants in connection with the Site.  In a resolution adopted contemporaneously with the amendment, the Village charged Defendants with adversely affecting the health and safety of Village residents by maintaining hazardous substances at the Site.  With this resolution, the Village slapped Defendants with the maximum fines allowed under the amended ordinance.  (Exs. 3-4 to Am. Compl., "Resolution Finding Risks to the Public Health from the Abandoned 1500 Acre Manufacturing Site of Exxon Mobil Corporation and CBS Operations, Inc.").[8]

The suit presently before this Court originated in Illinois circuit court, in the form of separate complaints against Exxon and CBS Operations for violations of the Village's newly-enacted hazardous substances ordinance.  Defendants removed their respective cases to this Court on diversity grounds in October 2008.  The Court consolidated the two cases shortly after removal; the lead case number is 08-cv-1272.  The Village filed an Amended Complaint on December 12, 2008 (Doc. 15).  In the Amended Complaint, the Village alleges Defendants' pre- and post-November 10, 2008 violations of the hazardous substances ordinance.  The Village also sets out claims of common law nuisance and trespass.  (Am. Compl. ¶¶ 23-25).

---

[8] The resolution's supporting legislative findings detail the Site's contamination and the resulting ecological and health effects in the area.  The Village based these findings on a report authored by the Village's attorney, Melissa K. Sims.  Sims is an attorney of record in this case.

Among other requests for relief, the Village asks for judgment on its ordinance-based claim in the amount of daily $10,000 fines applicable to each Defendant for the period of November 12, 2008 "until the pollution of the Village of DePue ceases . . . ." (Am. Compl. § VI ¶¶ 5-6). As to its common law claims, the Village requests "[d]amages in the amount of diminished real estate tax and sales tax revenues resulting from the decreased economic value of the property within the limits of the Village of DePue . . . ." (Am. Compl. § VI ¶ 7). Defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to strike certain requests for relief pursuant to Rule 12(f).

## LEGAL STANDARDS

A motion under Rule 12(b)(6) is designed to test the availability of legal relief under the alleged facts. See Maple Lanes, Inc. v. Messer, 186 F.3d 823, 824-25 (7th Cir. 1999). When ruling on a motion to dismiss under Rule 12(b)(6), a federal court must view the complaint in the light most favorable to the plaintiff, and the complaint's well-pleaded factual allegations must be accepted as true. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). To survive a Rule 12(b)(6) motion, a plaintiff must show, through allegations, that his entitlement to relief is plausible. Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin., 536 F.3d 663, 667 (7th Cir. 2008). A plaintiff meets this burden by alleging a general factual basis which, if true, would warrant relief under a specified legal theory. See Tamayo v. Blagojevich, 526 F.3d 1074, 1081-85 (7th Cir. 2008). Under Rule 12(f), the Court

may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## ANALYSIS

Defendants Exxon and CBS Operations view this suit as a second attempt by the Village to interfere with the ongoing IEPA-supervised cleanup at the Site. According to Defendants, the Village's application of its hazardous substances ordinance in this action is preempted by the Illinois Act. In a related argument, Defendants contend that the hazardous substances ordinance, as applied here, is not a valid exercise of home-rule authority under the Illinois Constitution. Alternatively, Defendants argue that the Village's attempt to enforce the ordinance is a violation of constitutional due process. In addition, Defendants ask the Court to dismiss the Village's nuisance and trespass claims on state-law preemption grounds and for failure to state a claim.

### I.    Claim under the Village's Hazardous Substances Ordinance

In holding the Village's similar nuisance ordinance to be preempted under state law in DePue I, the Court of Appeals emphasized the Village's status as a non-home-rule municipality and recognized the limited lawmaking power of non-home-rule local governments under the Illinois Constitution. 537 F.3d at 787. Today, the Village is a home-rule municipality. As a home-rule unit of local government, the Village now enjoys more autonomy and flexibility in governing its local affairs than it did under non-home-rule status. Home-rule municipalities derive lawmaking authority from Article VII, Section 6(a) of the Illinois Constitution. See

11

Schillerstrom Homes, Inc. v. City of Naperville, 762 N.E.2d 494, 497 (Ill. 2001).  The

provision states as follows:

> Except as limited by this Section, a home rule unit may exercise any
> power and perform any function pertaining to its government and
> affairs including, but not limited to, the power to regulate for the
> protection of the public health, safety, morals and welfare; to license;
> to tax; and to incur debt.

Ill. Const. 1970, art. VII, § 6(a).  Home-rule in Illinois originates from the idea that

local problems and issues are usually best addressed at the local level of

government.  Schillerstrom Homes, 762 N.E.2d at 497.  Section 6(i), Article VII of

the Illinois Constitution confirms that "[h]ome rule units may exercise and perform

concurrently with the State any power or function of a home rule unit to the extent

that the General Assembly by law does not specifically limit the concurrent exercise

or specifically declare the State's exercise to be exclusive."  Put generally, home-rule

municipalities can control their own affairs in the areas of public health, safety,

welfare, etc., unless the Illinois General Assembly specifically limits them from

doing so.

The Illinois Supreme Court has formulated a three-part inquiry to determine

whether a purported exercise of home-rule power by a municipality, like the one

here, is valid under the state's constitution.  First, the municipal exercise of power

must fall within Section 6(a), Article VII -- which means the exercise must pertain

to the municipality's government and affairs.  Second, the General Assembly must

not have specifically preempted the power or function that the municipality seeks to

exercise.  Third, if the municipality's exercise of power falls within Section 6(a) and

is not specifically preempted by the General Assembly, then it is up to the courts to determine the proper relationship between the local ordinance and the relevant state statute.  <u>Schillerstrom Homes</u>, 762 N.E.2d at 498-99 (citing <u>County of Cook v. John Sexton Contractors Co.</u>, 389 N.E.2d 553, 557 (Ill. 1979), *superseded by statute on other grounds as recognized in* <u>Village of Carpentersville v. Pollution Control Bd.</u>, 553 N.E.2d 362, 367 (Ill. 1990)).

When environmental matters are involved, courts must apply the third prong of the test with an eye toward state primacy.  <u>See</u> <u>John Sexton Contractors</u>, 389 N.E.2d at 559-60; <u>see also</u> <u>City of Wheaton v. Sandberg</u>, 574 N.E.2d 697, 701 (Ill. App. Ct. 1991) (distinguishing environmental cases from other types of cases with respect to home-rule power).  While the Illinois Constitution is the source of broad home-rule power that allows municipalities to govern locally in the areas of public health and safety, the state constitution also expressly directs the state to provide a uniform policy for environmental protection.  Article XI of the Illinois Constitution provides, "The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of future generations.  The General Assembly shall provide by law for the implementation and enforcement of this public policy."  The Illinois Supreme Court has interpreted this provision to mean, "[T]he General Assembly [will] provide leadership and uniform standards with regard to pollution control . . . ."  <u>John Sexton Contractors</u>, 389 N.E.2d at 559.  Accordingly, if home-rule municipalities in Illinois wish to legislate concurrently with the state on matters of environmental protection, they must stay within the

boundaries of uniform state-selected standards.  Id. at 560.  As the Illinois Supreme

Court recognized in John Sexton Contractors, "It is essential to the cause (to

preserve our environment) that the inter and intra governmental efforts

complement one another, that there be a coordinated plan of action with Uniform

standards."  Id. (quoting 6 Record of Proceedings, Sixth Illinois Constitutional

Convention 700) (parenthetical in original).

     For purposes of the Village's ordinance-based claim in this action, the Court

assumes that the Village could satisfy the first two steps of the three-part test

adopted in John Sexton Contractors and restated in Schillerstrom Homes.[9]  Even

so, by applying its hazardous substances ordinance in a way that is out of step with

the state's uniform standards for environmental protection, the Village fails at the

test's final step.  The Consent Order is the product of the Illinois Attorney General's

1995 civil action under the Illinois Act to remedy pollution at the Site.  The phased

and measured Site remediation plan outlined in the Consent Order reflects the

uniform standards that the Illinois General Assembly has adopted for cleaning up

polluted areas within the state.  See DePue I, 537 F.3d at 788.  The Consent Order

requires Defendants to identify potential threats to public health and the

---

[9] Defendants are quick to point out language in DePue I labeling the polluted Site as
a non-local problem.  See DePue I, 537 F.3d at 789.  Defendants read this language
as conclusive authority cutting against the Village at the test's first step.  The Court
disagrees.  DePue I did not involve the issue of home-rule power under Section 6(a),
Article VII of the Illinois Constitution.  Generally, home-rule units of local
government may legislate concurrently with the state on environmental control.
See City of Evanston v. Create, Inc., 421 N.E.2d 196, 200 (Ill. 1981) (citing John
Sexton Contractors, 389 N.E.2d at 559-60).  Further, the Illinois Act generally
allows for concurrent local environmental legislation.  See John Sexton Contractors,
389 N.E.2d at 559.

environment resulting from contamination at the Site.  Once those threats are

identified and adequately understood, Defendants are required to eliminate them

by developing and implementing customized state-approved plans for remediation.

(Consent Order at Section III(B)(1) & (2)).  As an unavoidable consequence of this

phased process, some hazardous substances will remain at the Site until

Defendants and the IEPA can determine the safest and most effective ways to

remove or eliminate them.  In fact, at least one remedial action that the IEPA has

selected for the Site specifically requires Defendants to provide for on-site

containment of contaminated sediment.  (Ex. D. to Mot. to Dismiss, 10/3/2003 IEPA

Record of Decision and 10/8/2003 EPA concurrence).[10]  Conversely, the Village's

ordinance penalizes Defendants with significant fines merely because the Site

"contains hazardous wastes or hazardous substances."  (DePue Village Code 7-7-5

through 7-7-6).

According to the Village, its present attempt to enforce its hazard substances

ordinance is not an attempt to regulate pollution at the Site.  Despite its intention

to penalize Defendants with fines of $750 or $10,000 (depending on the date of

violation) per day until "the pollution of the Village of DePue ceases," the Village

insists,

> The action here does not compel Exxon/Mobil and Viacom/CBS to do
> anything.  It assesses a penalty for the damage done to the Village
> from the pollution contained in the site.  The present ordinance does
> not inject the Village into the clean up.  It imposes a penalty for the

---

[10] The Court takes judicial notice of the IEPA's decision.  See Fornalik v. Perryman,
223 F.3d 523, 529 (7th Cir. 2000); Opoka v. I.N.S., 94 F.3d 392, 394 (7th Cir. 1996).

> continuing effects of the pollution on the public health and the
> economic value of the Village.

(Pl.'s Resp. to Mot. to Dismiss at p. 8) (emphasis added).  Essentially, the Village is characterizing its ordinance-based claim as compensatory in nature.  This characterization is internally contradictory at a basic level.  The ordinance overtly imposes a "civil penalty" for a violation.  (DePue Village Code 7-7-6).  A monetary penalty is commonly defined as "a sum of money exacted as punishment for . . . a civil wrong (as distinguished from compensation for the injured party's loss)." Black's Law Dictionary 1168 (8th ed. 2004) (ending parenthetical in original).  In other words, a civil penalty is designed to punish a wrongful act and to deter the wrongdoer from doing it again; a penalty is not designed to compensate anyone.  See United States v. WCI Steel, Inc., 72 F. Supp.2d 810, 833 (N.D. Ohio 1999) (recognizing deterrence as a primary purpose of a civil penalty in enforcing an environmental statute).  Using its hazardous substances ordinance, the Village seeks to deter Defendants from (and to punish them for) doing what the Consent Order requires them to do: keep contaminates contained at the Site for a period of time until well-designed remediation strategies are implemented.

     The hazardous substances ordinance, as applied in this action, is aimed at altering Defendants' conduct in a way that cannot be reconciled with Defendants' performance obligations under the Consent Order.  The Village is attempting to indirectly regulate Site cleanup activities using means which conflict with the uniform standards of environmental protection reflected in the Consent Order. Therefore, the Village's attempt to enforce its amended ordinance is an invalid

exercise of home-rule authority under the Illinois Constitution.[11]  Having disposed

of the claim on state law grounds, it is unnecessary to address Defendants'

constitutional challenge.

## II.    Common Law Nuisance & Trespass

Defendants contend that the Village's nuisance and trespass claims are

preempted by the Illinois Act.  According to Defendants' argument, the availability

of these common law causes of action in the present case would interfere with

ongoing cleanup at the Site.  The Court does not agree with Defendants to the

extent they suggest a blanket state-law preemption of common law claims related to

contamination at the Site.  The Illinois Supreme Court has recognized the existence

of common law remedies in addition to remedies under the Illinois Act -- at least in

situations where the common law remedy complements remedial efforts pursuant to

the Act.  See Donaldson v. Cent. Ill. Pub. Serv. Co., 767 N.E.2d 314, 338 (Ill. 2002).

As a general matter, common law remedies -- unlike the harsh, inflexible penalties

endorsed by the Village in its hazardous substances ordinance -- are compensatory

in nature and are tailored to redress specific injuries.

Nevertheless, in the Amended Complaint, the Village has failed to

adequately state a claim for either nuisance or trespass.  Even under the liberal

notice pleading standard applicable in federal court, a complaint must allege a

---

[11] The amended version of the Village's hazardous substances ordinance is DePue Village Code 7-7, adopted on November 10, 2008 (Ex. 6 to Am. Compl.).  As for DePue Village Code 7-6 (Ex. 2 to Am. Compl), which is the earlier version adopted on September 8, 2008 -- prior to the Village's November 4, 2008 election of home-rule status -- the provision, as applied here, is an invalid exercise of non-home-rule authority.  See DePue I, 537 F.3d at 787.

factual basis sufficient to state a claim that is plausible on its face.  <u>Limestone Dev. Corp. v. Village of Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  The Village's allegations of common law nuisance and trespass fall short of this standard.

    A.  <u>Nuisance</u>

Under Illinois law, in order to prevail on a public nuisance claim, a plaintiff must establish that the defendant has unreasonably interfered with a public right.  <u>See</u> <u>City of Chicago v. Am. Cyanamid Co.</u>, 823 N.E.2d 126, 131 (Ill. App. Ct. 2005).  Likewise, a private nuisance claim requires the plaintiff to show that the defendant has unreasonably invaded her interest in the use or enjoyment of her land.  <u>See</u> <u>In re Chicago Flood Litig.</u>, 680 N.E.2d 265, 277 (Ill. 1997).  Under both theories of nuisance, the plaintiff must point to <u>tortious conduct</u> by the defendant.  Here, the Village alleges that "[t]he existence of the toxic abandoned manufacturing site owned by Exxon Mobil and Viacom/CBS is a common law nuisance."  (Am. Compl. ¶ 24).[12]  The Site's mere existence, absent some specific unreasonable conduct by Defendants, is not a proper basis for a nuisance claim.  <u>Cf.</u> <u>Hyon Waste Mgmt. Servs., Inc. v. City of Chicago</u>, 574 N.E.2d 129, 132-33 (Ill. App. Ct. 1991) (noting, in a related statute of limitations context, that "[a] continuing [tort] . . . is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation).  Moreover, in order to state a claim for public nuisance based on

---

[12] The Village does not incorporate any other allegation to support its nuisance claim, nor does the Village cross-reference any attachment to the Amended Complaint to support the claim.

Defendants' cleanup-related activities at the Site, the Village must allege unlawful or negligent conduct.  See Donaldson, 767 N.E.2d at 338 (citing Gillmore v. Stanmar, Inc., 633 N.E.2d 985, 993 (Ill. App. Ct. 1994)); see also City of Chicago v. Beretta U.S.A. Corp., 821 N.E.2d 1099, 1124 (Ill. 2004) (addressing a public nuisance claim directed at a highly-regulated enterprise).

B.  Trespass

To prevail on a trespass claim under Illinois law, a plaintiff must plead and prove negligent or intentional conduct by the defendant which has resulted in an intrusion on the plaintiff's interest in exclusive possession of land.  Porter v. Urbana-Champaign Sanitary Dist., 604 N.E.2d 393, 397 (Ill. App. Ct. 1992) (citing Dial v. City of O'Fallon, 411 N.E.2d 217, 222 (Ill. 1980)).  In its Amended Complaint, the Village alleges, "The run off and downhill migration of the toxic metals . . . from the site into the Village of DePue and the Village property is a continuing common law trespass for which [ ] Exxon Mobil and Viacom/CBS are liable."  (Am. Compl. ¶ 23).  This allegation is insufficient to state a claim for trespass because the Village, again, does not point to any tortious conduct by Defendants.  Merely pointing to the migration of hazardous substances is not enough.

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss the Amended Complaint is GRANTED.  The Village's claims under DePue Village Code 7-6; the November 10, 2008 Resolution regarding the Site; and the amended DePue Village Code 7-7 (collectively, all claims set out in Paragraph 25 of the Amended Complaint)

19

are DISMISSED WITH PREJUDICE.  The trespass and nuisance claims set out in

Paragraphs 23 and 24, respectively, of the Amended Complaint are DISMISSED

WITHOUT PREJUDICE.  Because the Amended Complaint has been dismissed,

Defendants' motion to strike certain portions of the Amended Complaint is MOOT.

The Village is allowed a 30-day period during which it may file a Second Amended

Complaint for nuisance and trespass, if it so chooses.  Any attempt at a Second

Amended Complaint must be consistent with this Opinion.


        ENTERED this <u>25th</u> day of June, 2009.

                                        <u>s/ Joe B. McDade</u>
                                         JOE BILLY McDADE
                                        United States District Judge